IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RICKY R. FRANKLIN, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 17-1640-RGA |
| NAVIENT CORPORATION, et al., | : |
| Defendants. | : |

Ricky R. Franklin, Stockbridge, Georgia; Pro Se Plaintiff.

Joelle Eileen Polesky, Esquire, Stradley Ronon Stevens & Young, LLP, Wilmington, Delaware, Counsel for Defendants.

**MEMORANDUM OPINION**

September 5, 2019
Wilmington, Delaware


ANDREWS, U.S. District Judge:

Plaintiff Ricky R. Franklin, who appears *pro se* and has been granted leave to proceed *in forma pauperis*, filed this action on November 13, 2017, raising claims pursuant to the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227, *et seq.*, and the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* (D.I. 2). The Court has jurisdiction pursuant to 28 U.S.C. § 1331. Pending is a motion for summary judgment filed by Defendants Navient, Inc. and Student Assistance Corporation (improperly named as Student Assistance, Inc.) and Plaintiff's opposition. (D.I. 32, 37). The matter has been fully briefed. For the reasons discussed below, the Court will grant in part and deny in part Defendants' motion.

I. **BACKGROUND**

On June 28, 2004, Plaintiff obtained a federal consolidation loan (*i.e.*, student loan) under the Federal Family Education Loan Program. (D.I. 35 at ¶ 4; D.I. 35 at Ex. 1). Plaintiff's student loan is guaranteed against default by the United States Department of Education. (*Id.* at ¶ 5). Navient serviced Plaintiff's student loan during the relevant time-frame as set forth in the Complaint. (*Id.* at ¶ 6). Student Assistance Corporation is an affiliate of Navient and assisted in the servicing of Plaintiff's student loan. (*Id.* at ¶ 7). Plaintiff did not own a telephone number ending in 3733 when he entered into the 2004 contract. (D.I. 37-2 at 2 at ¶ 4). He began using the cellular telephone number ending in 3733 in November 2011. (*Id.*).

Navient has not received any payments toward Plaintiff's student loan since June 8, 2007. (D.I. 35 at ¶ 25). Beginning on or about April 30, 2012, Plaintiff executed the

1

first of four unemployment deferment requests. (*Id.* at ¶ 10). The deferment requests included Plaintiff's cellular telephone number ending in 3733, and Plaintiff agreed to allow "the school, the lender, the guarantor, the Department, and their respective agents and contractors to contact me regarding my loan(s), including repayment of my loan(s), at the current or any future number that I provide for my cellular telephone or other wireless device using automated dialing equipment or artificial or prerecorded voice or text messages." (*Id.* at ¶ 10; and Ex. 2). Navient accepted the terms in Plaintiff's April 30, 2012 deferment request and deferred the payments due under his student loan. (*Id.* at ¶ 11).

Plaintiff executed deferment requests on March 13, 2013 and August 25, 2014, which included the 3733 number and express language consenting to automated dialing equipment or artificial or prerecorded voice or text messages. (*Id.* at ¶¶ 12, 14; and Ex. 3). Navient accepted the terms of Plaintiff's second and third deferment requests, and Plaintiff's student loan payments were deferred. (*Id.* at ¶¶ 13, 15.)

According to Plaintiff's log, between January 25, 2015 and March 24, 2015, Defendants called the 3733 number 17 times. (D.I. 37 at Ex. A at ¶ 12-13; Ex. F). According to Plaintiff, when he was called at the 3733 number on January 26, 2015, and on March 24, 2015, he told representatives that they did not have permission to call him on his cell phone. (*Id.* at Ex. A at ¶ 7). According to Plaintiff, he sent Defendants letters in March 2014 and March 2015 requesting all "correspondence requests to be done in writing," referring to his Exhibit E. (*Id.* at 7, Ex. A at ¶ 6, Ex. E). The letters at Exhibit E request written debt validation information. (*Id.* at Ex. E).

2

According to Andrew Reinhart, Navient senior account analyst, Navient first began calling Plaintiff's 3733 number on March 17, 2015. (D.I. 34 at ¶¶ 4, 5 and Ex. 1; D.I. 35 at ¶ 16). According to Defendants, Navient placed five calls to Plaintiff's 3733 number between March 17, 2015 and March 24, 2015, all made using Navient's interactive intelligence telephone system. (D.I. 34 at ¶ 6 and Ex. 1 at DEF000037).

When Plaintiff executed a fourth deferment request on March 31, 2015, he provided the 3733 number and consented to automated dialing equipment or artificial or prerecorded voice or text messages. (D.I. 35 at ¶ 17 and Ex. 5). Navient accepted the terms in the March 31, 2015 deferment request and deferred Plaintiff's student loan payments. (*Id.* at ¶ 18). On September 24, 2015, Plaintiff executed a forbearance request and authorized "the entity to which I submit this request (*i.e.* the school, the lender, the guaranty agency, the U.S. Department of Education, and their respective agents and contractors) to contact me regarding my request or my loan(s), including repayment of my loan(s), at the number that I provide on this form or any future number that I provide for my cellular telephone or other wireless device using automated telephone dialing equipment or artificial prerecorded voice or text messages." (*Id.* at ¶ 19 and Ex. 6). Navient accepted the terms in Plaintiff's September 24, 2015 forbearance request and deferred Plaintiff's student loan payments. (*Id.* at ¶ 20).

On September 24, 2015, Plaintiff provided updated information and in the update provided his 3733 number and consent for his cell phone's use for automatic dialing and text messages when he listed the 3733 Number as his "Primary" and "Alternate" phone numbers and agreed, as follows:

> I authorize SLM Corporation, Sallie Mae Bank, Navient Corporation and Navient Solutions, Inc., and their respective subsidiaries, affiliates and agents, to contact me at such number using any means of communication, including, but not limited to, calls placed to my cellular phone using an automated dialing device, calls using prerecorded messages and/or SMS text messages, regarding any current or future loans owned or serviced by SLM Corporation, Sallie Mae Bank, Navient Corporation or Navient Solutions, Inc., or their respective subsidiaries, affiliates and agents, even if I will be charged by my service provider(s) for receiving such communications

(D.I. 35 at ¶ 17 and Ex. 7).

Plaintiff executed a second forbearance request on October 1, 2016. (*Id.* at ¶ 22). It included the 3733 number and gave consent to contact Plaintiff on his cellular telephone. (*Id.* at ¶ 23 and Ex. 8). Navient accepted the terms in Plaintiff's October 1, 2016 forbearance request and deferred his student loan payments. (*Id.* at ¶ 23).

Once Plaintiff's deferments and forbearances ended, Defendants began making calls to Plaintiff's 3733 number between January 24, 2017 and March 28, 2017 regarding the amount due and owing on Plaintiff's student loan using the LiveVox Human Call Initiator platform.[1] (D.I. 34 at ¶¶ 7-15 and Ex. 1; D.I. 35 at ¶ 24).

---

[1] The LiveVox system is a form of manual dialing in which an agent of Defendants logs into an online portal housed and maintained by LiveVox (a separate company from Navient or Student Assistance Corporation) on a remote server. (D.I. 34 at ¶ 10). When using the LiveVox system, Navient or Student Assistance Corporation is presented with a phone number to dial, and the agent either clicks on the telephone number to place the call, or chooses to skip the number. (*Id.* at ¶ 11). If a LiveVox call is placed and connects with a customer, it is transferred to a second Navient or Student Assistance Corporation agent, known as a "closer agent," who speaks with the customer about the account and then ends the call by noting the result of the call in Navient's or Student Assistance Corporation's system of record. (*Id.* at ¶ 12). According to the Director of "IT Service Delivery, Data Networks," Sherry Highfield, a call made using the LiveVox platform cannot be made without human intervention to place the call. (*Id.* at ¶ 13).

4

Defendants also made calls to Plaintiff's 3733 number using the Interactive Intelligence telephone system in preview mode. (*Id.* at ¶ 14 and Ex. 1). Preview mode is a form of manual dialing, wherein the agent is presented with a customer's account information at his or her workstation, and determines whether to place a call to the customer. (*Id.* at ¶ 15). In preview mode, the agent views a given customer's account profile, manually initiates a telephone call by clicking the phone button on his or her screen via a keyboard command or mouse click, listens to the phone ring, speaks with the customer about the account (if reached), and ends the call by noting the result of the call in Navient's or Student Assistance Corporation's system of record. (*Id.* at ¶ 17). A preview mode call cannot be made without human intervention to place the call. (*Id.* at ¶ 18).

The 2015 calls Defendants made to Plaintiff's 3733 number used the Interactive Intelligence telephone system, but Defendants' phone log does not indicate that the calls were made in the preview mode. (D.I. 34-1 at 2). Nor does the record explain the difference between when the Interactive Intelligence telephone system is used in preview mode and when it is not.

During his deposition, Plaintiff described an "auto dialer" as alleged in his Complaint as, "a system that dials numbers using an automated system and dials it frequently" and that calls his "phone a specific time every day for a month and a half around the same time." (D.I. 36-1 at 2). Plaintiff testified that other than noting that his number was called around the same time daily for a month and a half, he did not have any other information as to how the auto dialer worked. (*Id.* at 4).

## II. LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An assertion that a fact cannot be--or, alternatively, is--genuinely disputed must be supported either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-49 (1986).

## III. DISCUSSION

Defendants move for summary judgment: (1) as to the claims raised under the TCPA on the grounds that (a) calls made to collect loans guaranteed by the United States are exempt from the TCPA as a matter of law, (b) Plaintiff could not unilaterally withdraw his consent to receive automatic telephone dialing system calls, (c) Plaintiff has no proof that Defendants placed calls to Plaintiff's 3733 number using automatic

telephone dialing systems, and (d) Defendants did not use an automatic telephone dialing system because every call was made using the Interactive Intelligence telephone system in preview mode or the LiveVox system; and (2) Defendants are not "debt collectors" as defined under the FDPCA.

### A. Telephone Consumer Protection Act

As noted above, Defendants seek summary judgment on the TCPA claims. They contend that calls made to collect loans guaranteed by the United States are exempt from the TCPA as a matter of law, that Plaintiff could not unilaterally withdraw his consent to receive automatic telephone dialing system calls, that Plaintiff has no proof that Defendants placed calls to Plaintiff's 3733 number using automatic telephone dialing system, and that Defendants did not use an automatic telephone dialing system because every call was made using the Interactive Intelligence telephone system in preview mode or the LiveVox system.

#### 1. Exemption under the TCPA

The number of telephone calls made to Plaintiff prior to November 2, 2015 using Navient's Interactive Intelligence telephone system is in dispute, but the parties agree that calls were made to Plaintiff's cellular telephone. All other telephone calls were placed after November 2, 2015.

Under the TCPA:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States--
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice-- . . .

7

> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States.

47 U.S.C. § 227(b)(1)(A)(iii). That portion of the TCPA exempting calls made "solely to collect a debt owed to or guaranteed by the United States" was added by Congress as part of the Bipartisan Budget Act of 2015, Pub. L. No. 114-74, 129 Stat. 584 § 301 (Nov. 2, 2015).

Based on this exemption, Defendants assert that the TCPA claims fall outside the TCPA because Plaintiff's loan is guaranteed by the United States, the phone calls occurred after the TCPA was amended, and the calls were to collect a debt guaranteed by the United States. Plaintiff states that he had not heard of Defendants until December 2013 when a representative told him that Sallie Mae no longer existed and that his loan had been transferred. (D.I. 37 at Ex. A at ¶ 5). Plaintiff contends that because his loan was transferred in its entirety, the debt is no longer owed to the United States Government. Plaintiff, however, cannot escape the fact that his loan under the Federal Family Education Loan Program ("FFELP") is guaranteed by the United States Government.

The Higher Education Act established the FFELP -- a system of loan guarantees administered by the U.S. Secretary of Education that were "meant to encourage lenders to loan money to students and their parents on favorable terms." *Chae v. SLM Corp.*, 593 F.3d 936, 938-39 (9th Cir. 2010). The FFELP regulated three parts of student loan transactions: (1) between lenders and borrowers, (2) between borrowers and guaranty

8

agencies, and (3) between guaranty agencies and the Department of Education. *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 640 (7th Cir. 2015) (citing *Chae*, 593 F.3d at 939). "Under the program, lenders used their own funds to make loans to students attending postsecondary institutions. These loans were guaranteed by guaranty agencies and reinsured by the federal government." *Nelson v. Great Lakes Educ. Loan Servs., Inc.*, 928 F.3d 639, 643 (7th Cir. 2019) (citing 20 U.S.C. § 1078(a)–(c)). "Thus, the federal government served (and still serves) as the ultimate guarantor on FFELP loans." *Id.*

The plain language of the TCPA statute is unambiguous: calls made solely to collect U.S.-guaranteed debts are exempt from TCPA coverage. Here, Plaintiff's debts were all guaranteed by the United States. There was no other plausible purpose for the challenged calls but to collect those U.S.-guaranteed debts. All calls made after the exemption became effective, and Plaintiff's claims directed towards those calls must be dismissed. *See Whalen v. Navient Solutions, LLC*, 2018 WL 1242020 (S.D. Ind. Mar. 9, 2018) (dismissing a TCPA complaint because of the 2015 Budget Act exemption); *Hassert v. Navient Sols., Inc.*, 232 F. Supp. 3d 1049, 1050 (W.D. Wis. 2017); *Weaver v. Navient Sols., Inc.*, 2017 WL 3456325, at *4 (N.D. Ohio Aug. 11, 2017); *Kesselman v. GC Servs. Ltd. P'ship*, No., 2016 WL 9185399, at *4 (C.D. Cal., Nov. 17, 2016). In light of the fact Plaintiff's loan is guaranteed by the United States, all telephone calls made to him after the 2015 amendment are exempted by the TCPA.

Plaintiff argues, however, that the Federal Communications Commission issued regulations limiting the scope of the Budget Act amendments. Plaintiff relies upon the

9

FCC's August 11, 2016 order that contained proposed regulations to allow consumers to revoke consent to receive automated telephone dialing system calls to their cellular telephones, even if the calls were made to collect debts owed or guaranteed by the United States government, and it set limits on the number of calls that could legally be made during a month. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 31 FCC Rcd 9074, 9088-92, 2016 WL 4250379 (Aug. 11, 2016). The problem with Plaintiff's position, however, is that the FCC elected not to have any of the proposed regulations take effect prior to approval from the Office of Management and Budget. *See Schneider v. Navient Solutions LLC*, 2018 WL 2739437 at n.4 (M.D. Tenn. June 7, 2018) (concluding that proposed regulations in FCC Order never went into effect); *Sanford v. Navient Solutions, LLC*, 2018 WL 4699890 (S.D. Ind. Oct. 1, 2018); *Whalen v. Navient Solutions, LLC*, 2018 WL 1242020.

Accordingly, the Court will grant Defendants' motion for summary judgment on all TCPA claims for telephone calls made to Plaintiff after the 2015 amendment as exempted by the TCPA.

    **2.    Calls Made Prior to the November 2, 2015 Amendment**

        **a.    Withdrawal of Consent**

The Court turns next to the calls placed to Plaintiff prior to the November 2015 TCPA amendment. The evidence of record indicates that in each of Plaintiff's deferment requests, he provided his 3733 number and gave express authorization consenting to automated dialing equipment or artificial or prerecorded voice or text

messages. Although Plaintiff gave his authorization to allow Defendants to contact him, there is a genuine issue of material fact as to whether he withdrew or revoked that consent. Plaintiff contends that he did, while Defendants argue that Plaintiff may not unilaterally do so.

It is permissible under the TCPA to place a call to a cellular phone using an automated telephone dialing system or artificial or prerecorded voice if the caller has the prior express consent of the called party. See 47 U.S.C. § 227(b)(1)(A). Defendants rely upon Reyes v. Lincoln Auto. Fin. Servs., 861 F.3d 51 (2d Cir. 2017), to support their position that Plaintiff could not unilaterally revoke consent to be contacted under the TCPA. In Reyes, the Second Circuit stated, "The TCPA does not expressly permit a party who agrees to be contacted as part of a bargained-for exchange to unilaterally revoke that consent," and declined to "read such a provision into the act." Id. at 56. The Reyes Court held that under the common law of contracts, it "is clear that consent to another's actions can become irrevocable when it is provided in a legally binding agreement . . . in which case any attempted termination is not effective." Id. at 57 (internal quotations and citations omitted). The Reyes Court founds that the plaintiff had not "provided [his consent] gratuitously as it was included as an express provision of a contract" and held that "[u]nder such circumstances, 'consent,' as that term is used in the TCPA, is not revocable." Id. The Second Circuit distinguished between the kind of consent granted in the case before it, and consent "not given in exchange for any consideration, [ ] which is not incorporated into a binding legal agreement." Id. at 57. It

held that the latter kind of consent "may be revoked by the consenting party at any time." Whatever the merits of *Reyes*, Third Circuit precedent is to the contrary.

In *Gager v. Dell Fin. Services, LLC*, 727 F.3d 265, 268 (3d Cir. 2013), the Court of Appeals held that, based upon common law principles, the TCPA affords a consumer the right to revoke his prior express consent to be contacted on his cellular phone via an autodialing system and there is no temporal limitation on that right. *See also Daubert v. NRA Group, LLC*, 861 F.3d 382, 390 (3d Cir. 2017) ("we reaffirm that Congress 'did not intend to depart from the common law understanding of consent.'"). The *Gager* court explained that under the common law understanding of consent, the basic premise of consent is that it is "given voluntarily" and under common law consent may be withdrawn. *Gager*, 727 F.3d at 270-71. In addition, the *Gager* court rejected the creditor's position that "a creditor will want to know in advance whether a credit applicant will consent to automated phone calls and that this knowledge is part of the 'consideration' that the applicant offers in support of her application." *Id.* at 273. The Third Circuit explained, "Although [the creditor] is correct that the level of contact that a debtor will consent to may be relevant to the negotiation of a line of credit, the ability to use an autodialing system to contact a debtor is plainly not an essential term to a credit agreement." *Id.* at 273-74. The Third Circuit explicitly rejected the contract law argument that the Second Circuit accepted in *Reyes*. *Id.* Hence, under Third Circuit precedent, Plaintiff may unilaterally withdraw or revoke his express consent under the TCPA.

12

While it is undisputed that Plaintiff consented when he executed deferment requests, forbearance requests, and updated his information, in dispute is whether Plaintiff revoked that consent and when he did so.

In his affidavit with its supporting telephone log, Plaintiff states that he instructed Defendants to stop calling his cellular phone and for them to communicate only in writing. Plaintiff points to two letters to support his position that he asked Defendants to communicate only in writing (*see* D.I. 37 at 7, 11 (citing Exh. E (D.I. 37-6), letters dated 18 March 2014, and 18 March 2015)), but a review of the letters reveals that they make no reference to telephone calls. Nor do they ask Defendants to stop calling. Instead, they speak to written verification of Plaintiff's debt.

Defendants contend that Plaintiff's evidence of dates consists of hearsay that would be inadmissible at trial and that his affidavit is self-serving. Defendants argue that their business records show when the calls were made to Plaintiff's 3733 number and there is no evidence to the contrary. The "Supreme Court [has] rejected the view that the non-moving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment." *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1542 (3d Cir. 1990). "[H]earsay evidence . . . may be considered if the out-of-court declarant could later present the evidence through direct testimony, *i.e.*, in a form that 'would be admissible at trial.'" *Id.* There is no indication that Plaintiff would not be able to testify at trial that he orally told Defendants' representatives not to contact him.

13

As such, there is a factual dispute as to when and if Plaintiff revoked his prior express consent. *Gillard v. Receivables Performance Mgmt., LLC*, 2015 WL 3456751, at *10-11 (E.D. Pa. June 1, 2015) (denying summary judgment on a prior express consent claim of a TCPA case where the plaintiff testified that he was "sure [he] had" told defendant to stop calling him, yet there was nothing in defendant's account notes to show that plaintiff ever told them not to contact him). Therefore, this ground for summary judgment will be denied.

### b. Use of Automated Telephone Dialing System as Defined by the TCPA

Defendants argue that Plaintiff has no evidence that they placed calls to the 3733 number using an automated telephone dialing system. They further argue that the calls made with the Interactive Intelligence system in preview mode and LiveVox were not made using an automated telephone dialing system. Plaintiff relies upon information from a regulatory agency to show the system used by Defendants is an "auto-dialer." (D.I. 37 at 15).

The Third Circuit initially construed the term "automatic telephone dialing system" to mean "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1); *see also Dominguez v. Yahoo, Inc. ("Dominguez I")*, 629 F. App'x 369, 371-72 (3d Cir. 2015) (noting that the statute's reference to a "random or sequential number generator" was initially understood in relation to telemarketers' use of autodialing equipment that either called numbers in large sequential blocks or dialed random 10-digit strings, but that this interpretation changed

14

as such technology evolved and dialing from stored databases of numbers became more cost effective). However, the Third Circuit revisited the issue and reverted to the statutory definition of autodialer that had governed before the issuance of a 2015 FCC Declaratory Ruling. *See Dominguez on Behalf of Himself v. Yahoo, Inc.*, 894 F.3d 116, 119 (3d Cir. 2018). Under *Dominguez*, what makes a device an automated telephone dialing system is not its "latent or potential capacity to function as an autodialer," but its "present capacity to function as [an] autodialer." *Id.*; *see also King v. Time Warner Cable Inc.*, 894 F.3d 473, 481 (2d Cir. 2018) ("In sum, we conclude that the term 'capacity' in the TCPA's definition of a qualifying autodialer should be interpreted to refer to a device's current functions, absent any modifications to the device's hardware or software.").

Defendants state that Plaintiff has failed to produce any evidence that he received a phone call made using an automated telephone dialing system. However, Defendants do not indicate if the Interactive Intelligence system used in 2015 was an autodialer under the TCPA. Of concern to the Court is that Defendants make a distinction that the calls made in 2017 used the Interactive Intelligence (or "ININ") system in the preview mode, which requires human intervention to make the call. (*See* D.I. 33 at 5; D.I. 34 at 3, ¶¶ 14-18). Defendants, however, made no such distinction as to the 2015 calls. (*See* D.I. 33 at 3; D.I. 38 at 5; D.I. 34 at 3, ¶ 6). As noted, Defendants' log does not indicate the 2015 calls were made in the preview mode. Given the lack of evidence, the Court finds that there remains a material dispute of fact as to whether the Interactive Intelligence system used to make calls to Plaintiff's cellular

15

phone 2015 used an automated telephone dialing system as defined under the TCPA. Therefore, Defendants' motion seeking summary judgment on the grounds that Plaintiff has no evidence that Defendants used an automated telephone dialing system and that the 2015 calls were not made using such a system will be denied.

### B.     Fair Debt Collection Practices Act

Defendants move for summary judgment on the FDCPA claim on the grounds that they are not "debt collectors" as defined under the FDCPA. Plaintiff responds that Defendants cannot have it both ways; claiming they are protected by calling on the government's behalf and at the same time stating that they are collecting their own debt.

The FDCPA, 15 U.S.C. § 1692, *et seq.*, "prohibits 'debt collector[s]' from making false or misleading representations and from engaging in various abusive and unfair practices." *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995). "Because the FDCPA is a remedial statute, the Third Circuit has construed its language broadly so as to give effect to its purpose." *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006). A plaintiff bringing an FDCPA claim must show that "(1) []he is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015). The Act is limited to "consumer debt," defined as those debts "arising out of . . . transaction[s]" that are "primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5); *Heintz*, 514 U.S. at 293.

Under 15 U.S.C. § 1692d, a debt collector may not engage in "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." The statute enumerates, without limitation, certain acts which are a violation, including "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." *Id.* at § 1692d(5).

The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The term "debt collector" does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor." *Id.* at § 1692a(6)(F). "All that matters is whether the target of the lawsuit regularly seeks to collect debts for its own account or does so for 'another.'" *Henson v. Santander, Consumer USA Inc.*, 137 S.Ct. 1718, 1721, 1724 (2017).

The Court takes judicial notice that on May 1, 2014, SLM Corporation, known to consumers as Sallie Mae, went through a corporate reorganization, creating (1) a

17

restructured SLM Corporation, which continued operating as a separate publicly traded company and included Sallie Mae Bank, and (2) Navient Corporation, of which defendant Navient Solutions, Inc. is a subsidiary. *See Levy-Tatum v. Navient & Sallie Mae Bank*, 2016 WL 75231, at *6 (E.D. Pa. Jan. 7, 2016). In addition, the Court notes that on numerous occasions Courts have found that Navient is not a "debt collector" under the FDCPA. *See Levy-Tatum*, 2016 WL 75231 (dismissing the plaintiff's complaint which failed to include any factual assertions to establish that Navient is a debt collector under the FDCP A); *Spyer v. Navient Sols., Inc.*, 2016 WL 1046789, at *3 (D.N.J. Mar. 15, 2016), *reconsideration denied*, 2016 WL 5852849 (D.N.J. Oct. 4, 2016) (holding that Navient is not a debt collector because it commenced servicing before the loan's default); *see also Haysbert v. Navient Sols., Inc.*, 2016 WL 890297, at * 11 (C.D. Cal. Mar. 8, 2016) (explaining that numerous courts have found that student loan servicers that begin servicing before a loan goes into default are not debt collectors under the FDCPA); *Caione v. Navient Corp.* 2016 WL 4432687, at *5 (D.N.J. Aug. 18, 2016) ("Navient began servicing the loans prior to any default. Plaintiff has failed to allege any facts to support an allegation that Navient was a debt collector and the facts that are alleged suggest otherwise."); *Marek v. Navient Corp.*, 2017 WL 2881606, at *5 (N.D. Ohio July 6, 2017) (finding Navient was not a "debt collector" within the meaning of the FDCPA); *Valletta v. Navient Corp.*, 2017 WL 1437563, at *3 (D. Ariz. Aug. 24, 2017) (finding Navient not a FDCPA debt collector as a matter of law).

Notably Plaintiff has not refuted the Reinhart affidavit that Navient serviced Plaintiff's loan during the relevant time-frame and Student Assistance Corporation

assisted in the servicing of Plaintiff's student loan during the relevant time-frame. Instead, Plaintiff argues that Defendants are "debt collectors" because they made telephone calls on the government's behalf. Plaintiff's position does not suffice to defeat summary judgment on this issue. The Court finds that Plaintiff has not shown that Defendants are "debt collectors" within the meaning of the FDCPA, and thus his attempt to bring a claim under the FDCPA fails as a matter of law. *See, e.g., Cooper v. Pressler & Pressler, LLP*, 912 F.Supp.2d 178, 184-84 (D.N.J. 2012) (finding that the plaintiff had not demonstrated that the bank that originated the plaintiff's loan was a "debt collector" under the Act). Defendants' motion for summary judgment will be granted as to Count I, the FDCPA claim.[2]

## IV. CONCLUSION

Based upon the above discussion, the Court will: (1) grant in part and deny in part Defendants' motion for summary judgment. (D.I. 32). Summary judgment is granted as to Count I (FDCPA claim) and Counts II and III (TCPA claims as to all telephone calls that took place after November 2, 2015 as exempt). The matter proceeds on the remaining TCPA claims in Counts II and III related to telephone calls made January through March 2015.

An appropriate order will be entered.

---

[2] Because a debt collector is a necessary element of a FDCPA claim, the Court does not address the remaining argument Defendants raise in seeking summary judgment on the FDCPA claim.

19