IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RICKY R. FRANKLIN,

    *Plaintiff,*

    v.

NAVIENT, INC.; STUDENT ASSISTANCE, INC.,

    *Defendants.*

No. 1:17-cv-1640-SB

---

Ricky R. Franklin, Stockbridge, Georgia.

*Plaintiff.*

Kenneth Laurence Dorsney, Cortlan S. Hitch, MORRIS JAMES LLP, Wilmington, Delaware.

*Amici curiae supporting Plaintiff.*

Joelle Eileen Polesky, STRADLEY RONON STEVENS & YOUNG, LLP, Wilmington, Delaware.

*Counsel for Defendants.*

---

**MEMORANDUM OPINION**

April 19, 2021

BIBAS, *Circuit Judge*, sitting by designation.

"[J]udicial decisionmaking" after the fact "necessarily involves some peril to individual expectations." *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312 (1994). Navient may have to learn that the hard way. It robocalled Ricky Franklin for years to collect on his government-backed student loans. Although many types of robocalls are illegal, a federal law said that Navient's were exempt. Yet after Navient made the calls, the Supreme Court struck down the government-debt exception. And now Franklin is suing. Navient responds that it should not be liable for calls that were legal at the time.

But the calls were *not* legal at the time. When a court finds a law unconstitutional, it finds that the law was void since the day it was passed. So the robocalling ban never had a valid exception for government debt. Navient cannot rely on one. And while it reasonably *thought* it was covered by the exception, that is no defense to paying compensation.

Yet Franklin wants more than compensation; he wants punitive damages. And due process bans punishing parties without fair notice. By (mistakenly) saying that Navient's calls were allowed, Congress deprived it of fair notice. So if Franklin wins at trial, he may recover damages—but only to compensate him for the injuries he can prove.

## I. BACKGROUND

Between 2015 and 2017, Navient robocalled Franklin eighty-six times to collect his student debt. DI. 37-7. Franklin sued Navient under the Telephone Consumer Protection Act. This Court (Andrews, J.) granted partial summary judgment for

Navient. Franklin's student loans, it found, were backed by the federal government. And in November 2015, Congress had amended the Act to exempt robocalls "made solely to collect a debt owed to or guaranteed by the United States." 47 U.S.C. § 227(b)(1)(A)(iii). So this Court limited the suit to calls made before then. D.I. 40, at 8–10, 19.

But that exception, it turns out, is unconstitutional. Last year, the Supreme Court held that the government-debt exception violates the First Amendment by discriminating against other types of robocalls. *Barr v. Am. Ass'n of Pol. Consultants*, 140 S. Ct. 2335, 2347 (2020) (Kavanaugh, J., joined by Roberts, C.J., and Thomas and Alito, JJ.); *see id.* at 2356–57 (Sotomayor, J.); *id.* at 2363–64 (Gorsuch, J.).

The *Barr v. AAPC* plaintiffs asked the Court to strike down the whole robocalling ban. Justices Thomas and Gorsuch would have done that. *Id.* at 2365. But the other seven Justices disagreed. They chose "instead to invalidate and sever the 2015 government-debt exception." *Id.* at 2348–49 (Kavanaugh, J.). Justice Kavanaugh explained that Congress would have preferred nixing the exception to gutting the whole ban. Plus, the Act has a severability clause. *Id.* at 2352–55. Two other Justices joined his opinion, and four others joined that result. *Id.* (joined by Roberts, C.J, and Alito, J.); *id.* at 2357 (Sotomayor, J.); *id.* at 2363 (Breyer, J., joined by Ginsburg and Kagan, JJ.).

Based on *AAPC*, Franklin asks me to reconsider summary judgment. D.I. 72. Because the government-debt exception is void, he argues, this Court erred in relying on it. He brought *AAPC* to this Court's attention the day it came down. And because

3

this case is still open on other issues, I may reconsider the summary judgment. Fed. R. Civ. P. 54(b). So if he is right that *AAPC* undercuts this Court's ruling, I will grant his motion.

I appointed Kenneth Dorsney and Cortlan Hitch to brief and argue as amici curiae in support of Franklin. I am grateful for their help.

## II. NAVIENT MAY BE LIABLE FOR POST-2015 CALLS

Courts cannot change the law; they can only declare what the law has always been. When the Supreme Court severed the government-debt exception from the Act, it ruled that the law *never* had the exception—despite the law's text. So Navient cannot get summary judgment based on the exception's coverage.

Still, Navient seeks summary judgment for a different reason: even though the exception was void, it was on the books. So the company lacked fair notice that its speech was illegal. Enforcing the Act, it argues, would violate due process and the First Amendment.

Navient is mistaken. In civil cases, courts may apply surprising rulings to past acts. There is no exception for free speech (at least not yet). So Navient may have to compensate Franklin for its calls, whether before or after 2015.

### A. The government-debt exception never took effect

A severance ruling, like any other ruling, says only what the law is and has always been. Thus, the Supreme Court's decision severing the government-debt exception applies retroactively. That exception was never the law.

1. *Judicial decisions apply retroactively*. The Supreme Court has the power to declare law, not make it. The Constitution vests "[a]ll legislative Powers" in Congress.

U.S. Const. art. I, §1. Courts are limited to judging "Cases" and "Controversies." Art. III, §2. As Blackstone explained, they are "not delegated to pronounce a new law, but to maintain and expound the old one." 1 William Blackstone, *Commentaries* \*69. Their only power is "to say what the law *is*." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803) (emphasis added). So federal courts cannot "'change[]' the law"; they can only, in deciding cases, say what a law "has meant continuously since the date when it became law." *Rivers*, 511 U.S. at 313 n.12.

Because Supreme Court decisions clarify what the law "ha[s] *always* meant," their rulings apply to all open cases, even those whose facts predate the ruling. *Id.*; *Harper v. Va. Dep't of Tax'n*, 509 U.S. 86, 97 (1993). Otherwise, they would be "not … adjudication but in effect … legislation." *Griffith v. Kentucky*, 479 U.S. 314, 323 (1987) (quoting *Mackey v. United States*, 401 U.S. 667, 679 (1971) (Harlan, J., concurring in the judgment)). In short, judicial decisions apply retroactively. *Harper*, 509 U.S. at 94, 97.

2. *Severance rulings apply retroactively*. That rule is equally true of severance decisions. Severance is just ordinary statutory interpretation. *See Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 330 (2006). When a court finds a law unconstitutional, it finds that it is "void, and is as no law" from the day it is passed. *Ex parte Siebold*, 100 U.S. 371, 376 (1879). It never took effect as written. Often, the court must then decide what *did* take effect. Maybe no law did. But maybe Congress passed the law with a fallback rule. That is a question of statutory interpretation. The severance analysis answers it, telling us what the law has meant from the start.

5

3. *AAPC's rule applies retroactively*. When Congress amended the Act in 2015, it wanted to allow robocalls to collect government debt but ban other robocalls. In *AAPC*, the Court held that this combination of aims violates the First Amendment. If it violated the First Amendment in 2020, then it has violated the First Amendment since 2015. So Congress's ideal version of the Act was void from the start. It never became law.

Instead, some fallback rule kicked in right away. To cure the content discrimination, either the exception was void (so the Act covered all robocalls) or the exception became the rule (so it covered none). The Act has a severability clause. Thus, the *AAPC* plurality reasoned, Congress had picked the first rule. 140 S. Ct. at 2352.

*AAPC* addressed only what the Act means going forward. But if the exception was void the day it was passed, and Congress's fallback rule was to nix it, then it never took effect. As Justice Kavanaugh put it, the exception was "'not law' at all." 140 S. Ct. at 2351 n.8 (quoting *Marbury*, 5 U.S. at 177). If Navient relied on the government-debt exception, it made a mistake. Because the Constitution trumps the Act, the Act never had a valid exception. This Court erred in granting partial summary judgment.

### B. Enforcing the Act against Navient would not violate due process or the First Amendment

Navient also argues that it should not be held liable for what the Act seemed to allow. Though this argument is intuitive, it fails.

1. *Enforcing the Act would not violate due process*. Navient stresses that, realistically, it lacked notice that its calls might violate the Act. But it had no right to more notice.

The government may "impose a new [civil] duty or liability based on past acts." *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 16 (1976). If it does that, due process does not require advance notice. Nor does the Ex Post Facto Clause, which "extends to criminal, not to civil, cases." *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 399 (1798) (Iredell, J.); *accord id.* at 390–91 (Chase, J.); *id.* at 397 (Paterson, J.). *But see* Joseph Story, 3 *Commentaries on the Constitution* § 1339 (1833) (finding, "[a]s an original" matter, "no small force of authority and reasoning" to extend the bar equally to civil laws).

When a court merely recognizes that a civil duty has existed the whole time, the due-process objection is even weaker. Claims of reliance are thus "insufficient to deny retroactive application of a new" judicial interpretation. *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 753 (1995). So if a court first rules that a statute allows an action, but later changes its mind, someone who acted in the meantime is liable. *See, e.g.*, *Suesz v. Med-1 Sols., LLC*, 757 F.3d 636, 649 (7th Cir. 2014) (en banc); *Glazner v. Glazner*, 347 F.3d 1212, 1221 (11th Cir. 2003) (en banc). Even if a party relies on a statute, he is not safe. For instance, if a tort plaintiff waits until after the limitations period to sue because a state tolling rule says he can, but then a court strikes down the tolling rule, his suit is untimely. His claim vanishes even though he did not know the law was unconstitutional. *Reynoldsville*, 514 U.S. at 750–52.

So while Navient's fair-notice argument sounds plausible, the Court has roundly rejected arguments just like it. "[T]he substantive law [does not] shift and spring according to the particular equities of individual parties' claims of actual reliance on an

7

old rule." *Harper*, 509 U.S. at 97 (internal quotation marks omitted). Due process does not bar retroactive civil decisions.

2. *Enforcing the Act would not violate the First Amendment either*. Because the Act regulates speech, Navient argues that applying it unexpectedly would violate the First Amendment. But it cites no authority.

There is none. The closest analogue is in the criminal context. There, due process forbids applying an "unforeseeable judicial enlargement of a *criminal statute*" retroactively. *Bouie v. City of Columbia*, 378 U.S. 347, 353 (1964) (emphasis added). That bar works like the Ex Post Facto Clause, except that it applies to judicial broadening of a clear statute. *Id.* at 353–54. And the Supreme Court has applied the bar to its own ruling reading an obscenity statute broadly to reach previously protected speech. *Marks v. United States*, 430 U.S. 188, 195–96 (1977). But the Court has applied *Bouie* rarely, and only in criminal cases.

Under due process or the First Amendment, one could extend *Bouie* to civil cases that restrict speech. Notice is especially important for speech restrictions. The Supreme Court "ha[s] taken special care to insist on fair warning when a statute regulates expression and implicates First Amendment values." *Marks*, 430 U.S. at 196. Indeed, the Court already treats civil speech restrictions like criminal laws by applying "a more stringent vagueness test" to them. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982); *see, e.g.*, *Keyishian v. Bd. of Regents of Univ. of State of N.Y.*, 385 U.S. 589, 603–04 (1967) (civil regulation of teachers); *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1048–51 (1991) (lawyer disciplinary rule).

There is some logic to treating civil speech restrictions like criminal laws under *Bouie*, just as we do for vagueness. Unexpected liability could chill free speech. Plus, *Bouie* and vagueness are two strands of the same fair-notice requirement. *See, e.g.*, *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 249 (3d Cir. 2015); *see also Palmer v. City of Euclid*, 402 U.S. 544, 545–46 (1971) (per curiam); *United States v. Pa. Indus. Chem. Corp.*, 411 U.S. 655, 673–74 (1973). But Navient has not developed this theory, and the Court has not extended *Bouie* beyond criminal cases.

### C. To follow the *AAPC* plurality, I would need to overhaul the law

The *AAPC* plurality thought that government-debt collectors would avoid all liability. But I do not see how. In a footnote, Justice Kavanaugh wrote that "no one should be penalized *or held liable* for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before … th[at] case." *AAPC*, 140 S. Ct. at 2355 n.12 (emphasis added). To follow the second half of this dictum, I would need to either treat *AAPC* like legislation or extend *Bouie* to free-speech cases. Either would be a stretch. Plus, "a holding that shields *only* government-debt collection callers from past liability … would wind up endorsing the very same kind of content discrimination [that *AAPC*] s[ought] to eliminate." *Id.* at 2366 (Gorsuch, J.). The Supreme Court could reasonably extend *Bouie* to shield speakers, but I will not.

In the first half of its dictum, the *AAPC* plurality also thought that government-debt collectors should not be "penalized." *Id.* at 2355 n.12. With that, I agree.

9

### III. FRANKLIN MAY NOT GET PUNITIVE DAMAGES

The Act lets plaintiffs recover their "actual monetary loss[es]." 47 U.S.C. § 227(b)(3)(B). But it guarantees them at least $500 in statutory damages per robocall. *Id.* And for knowing or willful violations, it lets them seek treble damages. § 227(b)(3).

Franklin did not plausibly suffer $500, let alone $1500, in damages per call. As amici admit, that figure "seems grossly disproportionate to what the actual harm likely would be." D.I. 93, at 11–12. These sums appear large enough not just to compensate (as liquidated damages), but also to deter and punish wrongdoers. *Kruse v. McKenna*, 178 P.3d 1198, 1201 (Colo. 2008) ("[A] claim under the TCPA for $500 in liquidated damages per violation is a penalty …."); *see also Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.*, 401 F.3d 876, 881 (8th Cir. 2005) (concluding that the Act's statutory damages were meant both to punish *and* to compensate).

If Franklin wins, he may recover a part of the statutory damages that reflects both monetary and nonmonetary losses. Those include emotional and psychological harms, which are hard to quantify. But even though I will take those proof problems into account, Franklin needs some proof of his losses. He may not get the full $500 automatically, let alone treble damages. Those sums would be punitive and so quasi-criminal. Unlike compensatory civil liability, criminal and quasi-criminal liability must be reasonably foreseeable. And here it would not be: I cannot reasonably charge Navient with predicting that an act of Congress was unconstitutional.

10

### A. Punitive damages must comply with the notice rules for criminal cases

"[T]he standards of due process" do not turn on "the simple label [Congress] chooses to fasten upon … its statute." *Giaccio v. Pennsylvania*, 382 U.S. 399, 402 (1966). They turn on what the law *does*. *See, e.g.*, *FCC v. Fox TV Stations, Inc.*, 567 U.S. 239, 253–54 (2012) (applying the criminal law's fair-notice requirements to an agency's civil enforcement action). So due process's heightened notice requirements apply to criminal laws as well as to others that seek only to punish and deter.

Punitive damages are called civil. But they are functionally criminal. They are harsh. They deter and punish. And when a defendant lacks notice of them, they do not serve these purposes: one cannot deter or fairly blame the defendant. *Cf. Davis v. United States*, 564 U.S. 229, 236–37, 239–40 (2011) (declining to apply the Fourth Amendment exclusionary rule retroactively to searches that relied on appellate precedent that was later overturned, because the rule's purpose is to deter police misconduct).

Punitive damages "have [thus] been described as quasi-criminal." *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 432 (2001) (internal quotation marks omitted). So courts often hold those laws to the fair-notice standards of the criminal law. For instance, though Congress may create retroactive *compensatory* liability, the "[r]etroactive imposition of *punitive* damages would raise a serious constitutional question." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 281 (1994) (emphasis added); *accord Usery*, 428 U.S. at 17 ("[W]e would nevertheless hesitate to approve the retrospective imposition of liability on any theory of deterrence or blameworthiness."

11

(citations omitted)); *see also BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574–75 (1996) (holding that excessive punitive damages violate due process because wrongdoers lack fair notice of what conduct is punishable and by how much).

In that vein, because punitive damages are quasi-criminal, court rulings expanding their scope are limited by *Bouie*. *See Chemetron Corp. v. Bus. Funds, Inc.*, 682 F.2d 1149, 1181 n.76 (5th Cir. 1982), *vacated on other grounds*, 460 U.S. 1007 (1983). So unless *AAPC* was foreseeable, Franklin cannot rely on it to get punitive damages.

### B. *AAPC* was unforeseeable

In hindsight, *AAPC* makes sense. But as Niels Bohr supposedly quipped, prediction is very difficult, especially if it is about the future. To predict *AAPC*, Navient would have needed to guess two things: first, that the government-debt exception was unconstitutional; and second, that the Court would sever it rather than strike down the whole law. In theory, it could have done both. But even the first step "is too tortured and too far removed from reality to satisfy … due process." *United States ex rel. Clark v. Anderson*, 502 F.2d 1080, 1082 (3d Cir. 1974). Congress has an independent duty to interpret and obey the Constitution. *City of Boerne v. Flores*, 521 U.S. 507, 535 (1997). Courts presume its laws are valid. *Id.* Acts of Congress thus do not give "notice of [their] own invalidity." *Clark*, 502 F.2d at 1082. Private parties may reasonably assume that they are constitutional. Any error is not reasonably foreseeable.

True, when reviewing state common-law decisions, the Supreme Court has held private parties to a higher standard, barring retroactivity only for rulings that are "unexpected *and* indefensible." *Rogers v. Tennessee*, 532 U.S. 451, 462 (2001) (emphasis added) (internal quotation marks omitted). That high standard is required by

12

comity to state courts. But lower courts may never call Supreme Court decisions "indefensible." Still, *Bouie* does apply to Supreme Court decisions. *See Marks*, 430 U.S. at 195–96. That means that, so long as the Court's expansion of a statute is "unforeseeable," due process forbids applying its punitive damages retroactively.

That rule applies here. *AAPC* was unforeseeable and expanded the reach of the Act's punitive damages. So Navient may not be punished for making calls to collect government debt after 2015. It may need to cover Franklin's monetary losses, or total provable losses up to $500 per call. But anything more would violate due process.

\* \* \* \* \*

Navient reasonably thought that the statutory exemption sheltered it, so it may not be punished for trying to collect government debts after 2015. But because the exemption did not really exist, it may have to compensate Franklin for its calls. I will grant Franklin's motion to reconsider and amend the partial grant of summary judgment.